NO. 07-01-0203-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JUNE 18, 2003



______________________________




JEROME BAKER, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2000-434327; HONORABLE CECIL PURYEAR, JUDGE



_______________________________



Before QUINN and REAVIS, JJ., and BOYD, S.J. (1)

Memorandum Opinion


 In this appeal, appellant Jerome Baker challenges his conviction of murder and the
resulting punishment, enhanced because of a prior conviction, of life confinement in the
Institutional Division of the Department of Criminal Justice and a $10,000 fine. In doing so,
he presents three issues for our decision. In the first two of those issues, he contends the
evidence is both legally and factually insufficient to sustain the conviction, and in his third
issue, he argues that his trial counsel was so ineffective as to deprive him of his Sixth
Amendment right to counsel. Disagreeing that any of the issues reveal reversible error,
we affirm the judgment of the trial court.

 The standards by which we judge appellant's legal and factual sufficiency
challenges are now axiomatic. In reviewing the legal sufficiency of the evidence, we must
examine the evidence in a light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560 (1979); Villalon v. State, 791 S.W.2d 130, 132 (Tex. Crim. App. 1990). The
standard of review is the same for both direct and circumstantial evidence. Geesa v. State,
820 S.W.2d 154, 156-57 (Tex. Crim. App. 1991). In reviewing factual sufficiency
challenges, we must view all the evidence without the prism of in the light most favorable
to the prosecution and only set the verdict aside if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996). In performing our function, we must remember that we are
not free to reweigh the evidence and set aside a jury verdict merely because as appellate
judges, we feel that a different result is more reasonable. Id.

 Appellant was charged with the murder of Michael Satchel alleged to have been
committed on May 7, 2000, at the Fiesta Club in Lubbock. The evidence showed there
was a rather large group of people in attendance at the club and its immediate surrounding
area. The State's witness William Walker, the only witness of those present at the scene
who came forward and testified, averred that he saw appellant approach Satchel's car from
the rear with a gun and shoot him five times. The police investigation showed that the
victim was shot a "minimum" of four times and the injuries were consistent with the victim
being shot from the rear. Prosecution witness Tramitra Hawkins testified that about three
weeks before the shooting, she heard appellant, while looking in the direction of Satchel,
say, "I'm going to kill that nigger because that nigger killed my brother." D'Juana Johnson
said that the day after the shooting, she was with Walker and he pointed out appellant as
the one who shot Satchel. She also heard appellant's sister say that Satchel was shot
because he had killed another brother. Additionally, she said that about three or four days
after the occurrence, while appellant and some of his friends were "just shooting the breeze
about it," she heard appellant say, "I hated that I smoked that fool, but I did." Further, there
was evidence that appellant and the deceased were members of rival gangs and that the
shooting may have been gang related. One of appellant's fellow jail inmates said that he
asked appellant why he was in jail, and appellant answered, "I killed that nigger, but there's
no way they can prove it." There was also evidence that some two and a half hours after
the shooting, appellant purchased a one-way ticket to Dallas.

 In challenging the reliability of William Walker's eyewitness testimony, appellant
points out that Walker's opportunity to see the shooter, whom he did not previously know,
was estimated at about two seconds. Counsel also points out in Walker's initial statement
that he said he saw appellant and the victim in a fight shortly before the time of the
shooting, which he was later "corrected" about. Walker also had some discrepancies in
his description of the clothing the shooter was wearing at the time of the shooting.
Moreover, appellant notes that Walker did not come forward until a reward was offered and
his girlfriend told him of neighborhood gossip that appellant had committed the murder. 
Counsel also challenges the testimony of the State's witness D'Juana Johnson, pointing
out that she was William Walker's girlfriend, and suggests that her testimony relating to
appellant's committing the crime was based upon assumptions and hearsay statements
of the neighborhood. In sum, appellant argues that the State's case depended upon
Walker's testimony and because it had so many variables and inconsistencies, it was not
sufficient to sustain the conviction.

 We disagree. It is so well established as to not require the citation of relevant
authority that it is the peculiar function of the jury to determine the credibility of the
witnesses and the weight to be given their testimony. Whatever other inconsistencies may
have existed in Walker's testimony, he was consistent that he saw appellant shoot the
victim. That direct testimony, if accepted by the jury, as it obviously was, was legally
sufficient to sustain the verdict. Goodman v. State, 66 S.W.3d 283, 286 (Tex. Crim. App.
2001). Moreover, that uncontradicted testimony, coupled with all the surrounding
circumstances, including the witness testimony about appellant's admission of the crime,
was factually sufficient to sustain the jury's resolution. Appellant's first two issues are
overruled. 

 Reiterated, in his third issue, appellant posits that his trial representation was
ineffective and was not the result of trial strategy. The Sixth Amendment to the Federal
Constitution guarantees the right of effective assistance of counsel. That right is made
applicable to each of the states through the Due Process Clause of the Fourteenth
Amendment. Cuyler v. Sullivan, 446 U.S. 335, 343-44, 100 S.Ct. 1708, 1716, 64 L.Ed.2d
333 (1980). To demonstrate ineffective assistance of counsel, an appellant must meet the
two prong test explicated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984), and adopted in Texas by Hernandez v. State, 726 S.W.2d 53, 57 (Tex.
Crim. App. 1986). 

 In Strickland, the Court explained that a claimant must establish that trial counsel's
representation so undermined the "proper functioning of the adversarial process that the
trial cannot be relied on having produced a just result." Strickland, 466 U.S. 686, 104 S.Ct.
2064. To do so, an appellant must show: 1) trial counsel's performance was deficient;
and 2) the deficient performance was so serious that it prejudiced his defense. Id. 466
U.S. 687, 104 S.Ct. 2064. That means that an appellant must prove by a preponderance
of the evidence that his trial counsel's representation fell below the standard of prevailing
professional norms and that there is a reasonable probability that but for counsel's
deficiency, the result of the trial would have been different. McFarland v. State, 928
S.W.2d 482, 500 (Tex. Crim. App. 1996) (citing McFarland v. State, 845 S.W.2d 824, 842
(Tex. Crim. App. 1992)), cert. denied, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851
(1997), overruled on other grounds by Mosley v. State, 983 S.W.2d 249 (Tex. Crim. App.
1998).

 Additionally, the review of counsel's representation is highly deferential. In
conducting that review, we must indulge a strong presumption that counsel's conduct falls
within a wide range of reasonable representation and remember that the burden is upon
the appellant to overcome that presumption. Id. To overcome the presumption, an
appellant must identify the acts or omissions of counsel that are alleged to constitute
ineffective assistance, and he or she must affirmatively prove that they fall below the
professional norm for reasonableness. Id. Thus, an appellant must affirmatively prove 
prejudice. He or she must show that counsel's errors, judged by the totality of the
representation, not by isolated instances of error or by only a portion of the trial, denied him
a fair trial. Id. It is not enough for appellant to show that the errors had some conceivable
effect on the outcome of the proceedings, but he or she must show that there is a
reasonable probability that, but for counsel's errors, the factfinder would have had a
reasonable doubt respecting guilt. Further, performing its function, the reviewing court
must consider the totality of the evidence before the jury. Any allegations of
ineffectiveness must be firmly founded on the record, and the record must affirmatively
demonstrate the alleged ineffectiveness. Failure to make the required showing of either
deficient performance or sufficient prejudice defeats the ineffectiveness claim. Id.

 In advancing the theory that trial counsel was ineffective, appellate counsel refers
to the fact that at trial, counsel had in his possession four witness statements. During his
opening statement, trial counsel stated to the jury that Detective Bruenig (one of the
investigating officers) spoke to many witnesses and commented, "Hopefully, you're going
to hear from most of these witnesses." He also told the jury:

 They all told different stories. And these people will all tell you something
different about this shooting, different build, different clothes, different
hairstyle. They will tell you these different things.


Counsel argues that by telling the jury that they would be hearing from these witnesses, 
they would present "the rest of the story," and by failing to call them, counsel "lied" to the
jury and unfairly prejudiced his case. Appellate counsel has included the witness
statements in the record. However, other than those brief statements, there is no sworn
testimony produced from them at a new trial hearing to show exactly what their trial
averments would have been. Under this record, and within the purview of the presumption
of adequate representation, trial counsel could reasonably have concluded that after
hearing the State's case and exposing weaknesses in their testimony, the risk of putting
the witnesses on and exposing them to cross-examination would have exceeded any
benefit from the testimony. There is nothing in the record to show counsel's motivation in
not calling the witnesses. See, e.g., Mallett v. State, 65 S.W.3d 59, 67 (Tex. Crim. App.
2001) (when the record is silent about counsel's motivations, the court is unwilling to
conclude his representation was deficient). 

 Additionally, even assuming, arguendo, that counsel's trial performance fell below
an objective standard of reasonableness, appellant has failed to establish the second
prong of the Strickland test, namely, that but for trial counsel's failure to call the witnesses,
there is a reasonable probability that the result of the trial would have been different. 
Indeed, in footnote 1 on page 20 of appellant's brief, he notes that the witness statements
do not establish his innocence but are referred to for their "exculpatory" nature. While
those statements may differ in some respects from the sworn testimony of the State's
witnesses, they are not sufficient to give rise to a reasonable probability that the jury would
not have returned a guilty verdict. Viewed in the light by which we must view it, the record
does not show ineffectiveness of appellant's trial representation. Appellant's third issue
is overruled.

 In sum, all of appellant's issues are overruled and the judgment of the trial court is
affirmed. 

 John T. Boyd

 Senior Justice


Do not publish. 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 



o determine whether there are
any non-frivolous issues which might support the appeal. See Penson v. Ohio, 488 U.S.
75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); In re Schulman, 252 S.W.3d at 409; Stafford
v. State, 813 S.W.2d 503, 511 (Tex.Crim.App. 1991). We have found no such issues. 
See Gainous v. State, 436 S.W.2d 137 (Tex.Crim.App. 1969). After reviewing the record,
counsel’s brief, and Appellant’s pro se response, we agree with counsel that there are no
plausible grounds for appeal. See Bledsoe v. State, 178 S.W.3d 824 (Tex.Crim.App.
2005).
          Accordingly, counsel's motion to withdraw is granted and the trial court’s judgments
are affirmed. 
                                                                           Patrick A. Pirtle

                                                                                 Justice



                                                                                                                                    

Do not publish.